*Hall* and *Thompson,* for appellant.

*Chas. H. Phelps,* for the state.

— · - · ◆ ◉ ◇ —— —

## MORRISON *v.* LANGWORTHY.

In the act of 1847, the northern boundary line of Dubuque is designated as starting from a given "stake and stone," " thence on the north boundary north sixty-seven degrees thirty minutes, east to the middle of the main channel of the Mississippi river ; " held that the general and unidentified words " on the north boundary," would not justify a deflection from the given course, and that the locative termini of the line, and the given course, must govern.

### Appeal from Dubuque District Court.

*Opinion by* GREENE, J. This proceeding was commenced by J. L. and E. Langworthy, by a petition to the county judge for an injunction against D. M. Morrison, as collector of taxes for the city of Dubuque, to restrain him from selling certain lands for city taxes. The injunction was granted, on the ground that the lands referred to, were not within the city limits, and therefore not subject to city tax. The case was submitted to the dis-

trict court, by agreement of counsel, on the single question, whether the Dubuque city charter of 1847 included land outside of the original survey. The court decided that the land in question is not subject to city tax, because not within the city limits.

It is now claimed that the district court erred in this decision. This involves a simple question of construction. By the act of 1847, amending the charter of 1840, the territorial limits of the city are materially changed. The act of 1840 recognizes the original bounds of the town of Dubuque, as laid out by commissioners, appointed pursuant to an act of Congress, to lay off the town of Dubuque, while the act of 1847 adopts new lines, and more extended boundaries, referring in part, only, to the original lines of the town. The old boundary extended merely to the slough, situated between the town and the Mississippi river, while the new boundary embraces the slough, by extending the city limits to the middle of the main channel of the river. The act of 1847 defines the boundaries as follows: Beginning at a point in the middle of the main channel of the Mississippi river eastwardly, and in a line with the south boundary of the town of Dubuque, as surveyed and laid out by the commissioners, appointed in pursuance of an act of Congress, to lay off the towns of Fort Madison, Burlington, Dubuque, &c., thence south sixty-seven degrees, thirty-nine minutes west, to a stone planted in the ground, thence on the westerly boundary north twenty-two degrees, thirty minutes west, to a stake and stone; "*thence on the north boundary north sixty-seven degrees thirty minutes east, to the middle of the main channel of the Mississippi river;* thence down said river, with the said channel, to the place of beginning."

A large portion of the southern, all of the western and a small portion of the northern boundary, appear to be agreeable to the original survey of the town. But according to that original survey, in starting from the north-west corner, and running thence north sixty-seven degrees

thirty minutes east, it is only fifty-four chains and fifty-five links in that direction, but runs thence south twenty-two and a half degrees east, thirty-eight chains and seventy links, and thence runs north sixty-seven and a half degrees east about thirty-two chains to the slough. Thus leaving the land in question, and a large amount of other lands, lake and slough outside of the city, according to the original survey, and the boundaries established by the act of 1840. But we think this territory is within the city limits, and south of the line designated by the act of 1847, as starting from the north-west corner, "*thence on the north boundary north sixty-seven degrees thirty-minutes east, to the middle of the main channel of the Mississippi river.*" There is no ambiguity in this language, and clearly no off-set or diverging line is contemplated from the course designated. The line starts on the north boundary, and continues on the direct course designated, to the Mississippi river. But according to the construction given below, this line is not permitted to run more than one-third of its prescribed course, before it is required to take a right angle to the south, and run *on an east boundary line* over thirty-seven chains, before performing its journey to the river, thus excluding from the city about one-third of its rightful territory.

Great importance is attached to the words "north boundary," but we can see nothing in them to justify so material a deviation from the course so clearly called for and designated. What is there in these words to show that they refer to the "north boundary," as established by the commissioners, under the original survey? So undefined and disconnected are these words, that they may, with at least equal, if not greater propriety, refer to the new north boundary, as established by the act of 1847, as to the old boundary, established by the act of 1840. If they relate to the old north boundary, they are not consistent with the course designated; but if to the new, they are consistent. That construction which will secure har-

mony, and the least conflict of meaning, should be favored. If the legislature intended to adopt the line of the original survey, at the north end of the city, that intention would have been expressed in the description. The original course from the north-west corner, was partly north boundary, and partly east boundary, and extend only to the slough, scarce half way to the Mississippi river, while the new description took a direct, undeviating line, forming a north boundary all the way, and extending to the middle of the river.

But it is claimed that course and distance must yield to ascertained, fixed and certain objects, as decided in *Gavney* v. *Hinton*, 2 G. Greene, 344. True, but where are those ascertained and fixed objects, to which the specified course should yield? Surely, not in the vague and undefined term of "*north boundary*." What north boundary? When and by what objects established?

At most, the term "north boundary," is general, directory and uncertain, and should yield to the special or locative call, as designated by the needle. *Wright* v. *Mabry*, 9 Yerg., 55. In *Bell* v. *Hickman*, 6 Humphrey, 398, it was held that special or locative calls must control those which are merely directory and general. The line in question, in starting from the north-west corner of the incorporated district, had distinct and special objects, a " stake and stone," and thence on the north boundary, and on a given specified course to the middle of the river. Here the termini are locative and visible objects; the course is also specially and clearly given, hence the term "north boundary," without being identified, is too vague and equivocal to justify any deflection from the given course.

Judgment reversed.


*Hempstead* and *Burt*, for appellant.

*Smith* and *McKinlay*, for appellee.